STEPHEN J. ERIGERO
Nevada Bar No. 11562
TIMOTHY J. LEPORE
Nevada Bar No. 13908
ROPERS, MAJESKI, KOHN & BENTLEY
3753 Howard Hughes Pkwy., Suite 200
Las Vegas, Nevada 89169
Telephone:     (702) 954-8300
Facsimile:      (213) 312-2001
Email:           stephen.erigero@rmkb.com
timothy.lepore@rmkb.com

Attorneys for Defendant
THE LANGSDALE LAW FIRM, P.C.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LINDA COX,<br><br>                     Plaintiff,<br><br>v.<br><br>RICHLAND HOLDINGS, INC. d/b/a/<br>ACCOUNT CORP  OF SOUTHERN<br>NEVADA, a Nevada Corporation, PARKER<br>& EDWARDS, INC., a Nevada Corporation,<br>and THE LANGSDALE LAW FIRM, P.C., a<br>Nevada professional corporation,<br><br>                     Defendants. | Case No.  2:16-cv-02914-APG-VCF<br><br>**DEFENDANTS' JOINT MOTION FOR<br>CASE DISPOSITIVE SANCTIONS AND<br>MONETARY SANCTIONS**<br><br>[*Declaration of Timothy J. Lepore;<br>Declaration of Chad F. Clement; and Index of<br>Exhibits submitted concurrently herewith*]<br><br>Judge: Andrew P. Gordon |

Defendants THE LANGSDALE LAW FIRM, P.C. ("Langsdale"), RICHLAND

HOLDINGS, INC. d/b/a/ ACCOUNT CORP OF SOUTHERN NEVADA ("AcctCorp"), and

PARKER & EDWARDS, INC. ("P&E") (collectively, "Defendants"), by and through its counsel

of record, hereby respectfully move this Court, in accordance with Rule 37(b) of the Federal

Rules of Civil Procedure, to issue case-dispositive sanctions against Plaintiff Linda Cox's

("Plaintiff") for failure to attend her deposition and participate in discovery in good faith and

request monetary sanctions against Plaintiff and her counsel.

Defendants' Motion is based on the following Memorandum of Points and Authorities,

the Declaration of Timothy J. Lepore and the Exhibits attached thereto, the pleadings and papers

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

1    on file herein, and any oral arguments that this Court will permit at a hearing on the matter.

2

3    Dated:      August 21, 2017        ROPERS, MAJESKI, KOHN & BENTLEY

4

5                               By: /s/ *Timothy J. Lepore*

6                                   Stephen J. Erigero, Esq.
                                   Nevada Bar No. 11562

7                                    Timothy J. Lepore, Esq.
                                   Nevada Bar No. 13908

8                                    3753 Howard Hughes Pkwy., Suite 200
                                   Las Vegas, Nevada 89169

9                                    *Attorneys for Defendant*
                                   *THE LANGSDALE LAW FIRM, P.C.*

10    Dated:      August 21, 2017        MARQUIS AURBACH COFFING

11

12                               By: /s/ *Chad F. Clement*

13                                    Terry A. Coffing, Esq.
                                   Nevada Bar No. 4949

14                                    Chad F. Clement, Esq.
                                   Nevada Bar No. 12192

15                                    Jared M. Moser, Esq.
                                   Nevada Bar No. 13003

16                                    10001 Park Run Drive
                                   Las Vegas, Nevada 89145

17                                    *Attorneys for Defendants*
                                   *RICHLAND HOLDINGS, INC. d/b/a/*

18                                    *ACCTCORP OF SOUTHERN NEVADA and*
                                   *PARKER & EDWARDS, INC.*

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 2

    B.    Plaintiff Has Repeatedly Failed To Comply With The FRCP And Respond To Defendants' Discovery Efforts ........................................................... 4

          1.   Plaintiff Twice Failed To Appear For Her Noticed Deposition.................. 4

          2.   Plaintiff Failed To Timely Respond To Defendants' Written Discovery Requests, And Plaintiff's Counsel Blatantly Misrepresented The Dates He Served Plaintiff's Belated Discovery Responses ..................................................................................................... 7

          3.   Plaintiff's Responses To Defendants' Written Discovery Are Wholly Inadequate And Shielded Evidence Of CRN's Involvement In This Action .................................................................... 9

          4.   Plaintiff Failed To Timely Disclose Damages, Documents, and Evidence .............................................................................................. 11

          5.   Plaintiff Failed To Respond To Defendants' Request To Take Her Deposition Outside The Close Of Discovery, Will Not Stipulate To Extending The Dispositive Motion Deadline, And Untimely Verified Her Responses To Defendants' Interrogatories ....................... 13

III.  LEGAL ARGUMENT ....................................................................................... 14

    A.    This Court Should Dismiss Plaintiff's Action For Her Egregious Discovery Abuses .............................................................................................. 14

          1.   The Public Interest In Expeditious Resolution Favors Dismissal Of Plaintiff's Complaint Against Defendants ................................................ 15

          2.   This Court's Need To Manage Its Docket Weighs In Favor Of Dismissing Plaintiff's Complaint Against Defendants ............................ 16

          3.   Plaintiff's Actions Have Prejudiced Defendants' Defense In This Action ............................................................................................... 17

          4.   Public Policy Does Not Justify Denying Defendants' Request For Case-Dispositive Sanctions ......................................................... 19

          5.   This Court Cannot Cure The Prejudice Plaintiff's Discovery Abuses Have Caused Defendants By Imposing Lesser Sanctions ....................... 20

    B.    This Court Should Also Impose Monetary Sanctions Against Plaintiff And Her Counsel ...................................................................................... 21

IV.  CONCLUSION .................................................................................................. 22

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In ruling on this Motion, this Court must decide a single issue: do Plaintiff's egregious discovery abuses justify this Court to dismiss Plaintiff's action?  The answer to that question is a resounding "yes." Plaintiff has twice failed to appear for her noticed deposition, emailing Defendants' counsel merely one to two days before the deposition with implausible excuses to justify her non-appearance. In addition, Plaintiff: (1) neglected to make timely disclosures of all damages, evidence, and witnesses supporting her case, (2) has withheld relevant documents, (3) misrepresented the dates she served responses to Defendants' written discovery, and (4) blatantly concealed evidence regarding third parties soliciting her to file this lawsuit against Defendants.

The Federal Rules of Civil Procedure ("FRCP"), Rule 37(d)(3), empowers this Court to issue case-dispositive sanctions if a party refuses to appear for its deposition. In deciding whether to issue case dispositive sanctions, this Court is allowed to evaluate the totality of Plaintiff's discovery abuses. Moreover, the Ninth Circuit has encouraged this Court to dismiss an action when a party's counsel willfully failed to comply with the FRCP, or acted in flagrant disregard of those rules.

Here, Plaintiff and her counsel have committed numerous discovery abuses and failed to participate in this action in good faith. Despite Defendants noticing Plaintiff's deposition more than 45 days before discovery closed, she refused to sit for her deposition. She also did not respond to Defendants' written discovery in good faith, failed to verify her answers to Defendants' Interrogatories until after discovery closed, claimed certain documents did not exist even though she knew otherwise, made numerous supplements to her Initial Disclosures *after discovery closed*, and shielded all evidence of a third party, Safeguard Credit LLC, dba Credit Restoration of Nevada ("CRN"), soliciting her to file this lawsuit.  In fact, based on the strong evidence developed to date, Defendants believe that Plaintiff's counsel and CRN are now maintaining this action without her assistance.

Given Plaintiff's and her counsel's complete dereliction of duty to comply with their most

basic discovery obligations, this Court should issue case dispositive sanctions and dismiss Plaintiff's action, as she has prejudiced Defendants' defense beyond repair. Defendants also request this Court to impose monetary sanctions in favor of Defendants against Plaintiff and her counsel.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Counsel And A Third-Party, Credit Restoration Of Nevada, Likely Solicited Plaintiff To File This Action And Are Now Maintaining It Without Plaintiff's Participation.

Plaintiff's failure to participate in discovery is no mystery. She did not bring this action to right a wrong, but was solicited by CRN and Plaintiff's counsel to file this action against Defendants to extort money from Defendants and put AcctCorp out of business. Defendants are cognizant of the assertion they make, but it is founded on overwhelming evidence uncovered to date. To find potential clients for Plaintiff's counsel, CRN searches and reviews court dockets and public records to identify lawsuits filed against debtors. *See* Lepore Decl., ¶ 2, Ex. A. CRN then obtains the debtors' contact information and "cold-calls" or emails them, soliciting them to file lawsuits against AcctCorp and its clients at no cost to the debtors. *See id.*, ¶ 2, Ex. A; *see also id.*, ¶ 3, Ex. C, D. Geraldo Dep., 48:9-17. Plaintiff's counsel is aware of this, as he was copied on emails from CRN that contained draft language it would use to solicit debtors. Lepore Decl., ¶ 2, Ex. A.

This process was confirmed in another case, styled *Geraldo v. Richland Holdings, Inc. et al.*, No. 2:17-cv-15, involving AcctCorp and other plaintiffs represented by Plaintiff's counsel asserting the same bogus claims. *See Geraldo*, [ECF No. 28] (filed Aug. 9, 2017). There, Wendoly Geraldo (formerly known as Wendoly Guzman) admitted she was solicited to file a lawsuit against AcctCorp for FDCPA violations. Lepore Decl., ¶ 3, Ex. B, W. Geraldo Dep., 11:11-13:22. Specifically, Ms. Geraldo testified that someone randomly called her and asked her to visit CRN's office to discuss potential FDCPA violations. *Id*. CRN never performed any credit repair services, (Lepore Decl., ¶ 3, Ex. C, D. Geraldo Dep., 14:9-12), and instead, Ms. Geraldo and her husband executed a "Durable Limited Power of Attorney" ("POA"), which authorized

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

CRN to file suit against their creditors. *See* Lepore Decl., ¶ 3, Ex. B, W. Geraldo Dep., 26:3-32:23. Harry Jacobs, CRN's chief executive officer, then referred/retained Plaintiff's counsel on the Geraldos' behalf. Lepore Decl., ¶ 3, Ex. C, D. Geraldo Dep. 12:22-13:20. That lawsuit was filed without the plaintiffs even reviewing the complaint. Lepore Decl., ¶ 3, Ex. B, W. Geraldo Dep., 20:25-22:25; Lepore Decl., ¶ 3, Ex. C. D. Geraldo Dep., 50:8-51:9.

Based on documents received so far in this case, Defendants suspect the same thing occurred here, but Plaintiff has refused to sit for her deposition to confirm this. On June 23, 2017, Defendants received two documents from CRN in response to a subpoena, the POA and an "Acknowledgement of Engagement/Representation" (the "AER"). The POA is between CRN and Plaintiff. Lepore Decl., ¶ 4, Ex. D, p.1. The POA allows CRN to exercise the power, authority, and control to: "Demand, retain counsel to sue for, recover, collect, and hold all . . . monies paid to [Plaintiff], and to deliver appropriate receipts, releases or other documents[,]" and to accept any settlement for more than $1,000. *Id*.

In addition to this POA, Plaintiff purportedly signed the AER with Plaintiff's counsel, Vernon Nelson, wherein Plaintiff acknowledges that CRN controls all decisions regarding litigating this action. Specifically, this document states:

> By way of this memorandum, [Plaintiff's counsel is] confirming that [Plaintiff has] granted [CRN] (the "Company") a Power of Attorney ("POA") that authorizes the Company to retain legal counsel for Plaintiff. The Company has engaged the Law Office of Vernon Nelson (the "Firm") to represent [Plaintiff] in the Matter described above [*Cox v. Richland Holdings et al.*, No. 2:16-cv-2914] (the "Matter"). *Thus, the Firm will represent [Plaintiff] in accordance with the terms of the Engagement Letter between the Company [*i.e., *CRN] and the Firm (the "Engagement Letter").*
>
> ****
> Although [Plaintiff] will be the Firm's primary client . . . , the Firm will work directly with the Company to represent [Plaintiff's] interests. The Company will: (1) instruct the Firm regarding the handling of the Matter; (2) communicate with the Firm concerning your case; and (3) provide the instructions/authority to settle . . .

Lepore Decl., ¶ 4, Ex. E, p.1 (emphasis added). Both documents are undated, but it is clear from these documents that Plaintiff's counsel and CRN have executed a separate "Engagement

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

Letter,"[1] which suggests CRN has a financial interest in the litigation. As such, based on Plaintiff's failure to respond to discovery and sit for her deposition, it seems Plaintiff's counsel and CRN are maintaining this action without Plaintiff's participation. *See* Lepore Decl., ¶ 3, Ex. B, W. Geraldo Dep., 10:20-11:10 (stating that the date of deposition was the first time Ms. Geraldo had ever spoken to her attorney).

Not only does this conduct warrant terminating sanctions, it is an egregious breach of Plaintiff's counsel's ethical duties.[2] *See, e.g.,* Nev. R. Prof. Conduct 1.2 (scope of representation and allocation of authority), 1.4 (communication), 2.1 (counsel's role as an advisor), 3.1 (requiring that claims and contentions be supported by law and fact), & 7.1 (addressing false or misleading statements about a lawyer's services, such as his true representation of an LLC holding a POA for a named plaintiff with whom he has never spoken).

**B.** **Plaintiff Has Repeatedly Failed To Comply With The FRCP And Respond To Defendants' Discovery Efforts.**

On February 17, 2017, this Court approved and entered the parties' Joint Discovery Plan and Scheduling Order [ECF No. 22]. The Order required the parties to make initial disclosures by March 2, 2017, set a discovery cut-off date of July 10, 2017, and mandated the parties file their dispositive motions by August 9, 2017. *Id*. at 2:1-20. Plaintiff has continually flouted this Order.

**1.** **Plaintiff Twice Failed To Appear For Her Noticed Deposition.**

With discovery closing on July 10, 2017, on May 25, 2017, Defendants noticed Plaintiff's deposition for June 23, 2017, which provided her almost a full month to inform Defendants of any scheduling conflict. Lepore Decl., ¶ 5, Ex. F. Despite ample notice, on June 20, 2017, just two days before Plaintiff's scheduled deposition, and *26 days* after Defendants noticed her deposition, Plaintiff's counsel emailed Defendants and stated:

> We have been trying to reach [Plaintiff] to . . . prep her for
> deposition . . . We finally communicated with [her] and she
> informed us that her employer told her late last week that she

---

[1] This Engagement Letter has never been produced despite Defendants' discovery requests for the same.

[2] Defendants are in the process of drafting a complaint to the State Bar of Nevada.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

> need[ed] to travel out of state this week. We reminded her about the deposition . . . but she said she had to follow . . . instructions . . . or risk losing her job. So she will not be in Vegas to appear on June 23rd.  I'm sorry for the short notice … but we just learned of this.

Lepore Decl., ¶ 6, Ex. G, p.1.

Given the short notice, and with discovery closing on July 10, 2017, Defendants discussed options to ensure Plaintiff's deposition was taken without prejudicing their defenses. Thus, at 5:41 p.m. that same day, AcctCorp and P&E's counsel emailed Plaintiff's counsel and stated:

> I will be out of the office 6/29-7/4.  So, we could do the deposition early next week (provided sufficient notice from you) or 7/6 or 7/7, if we absolutely had to, but those dates are difficult for [Langsdale's counsel], as I understand it.  If we cannot make those dates work, *we would be willing to extend the discovery cut off of 7/10 for a week or two for the sole purpose of taking [Plaintiff's] and [CRN]'s depositions*. When you get a chance, please let us know how you want to proceed.  Perhaps the best first step is to get 3 or 4 available dates from [Plaintiff], then work from there. . . .

Lepore Decl., ¶ 6, Ex. G, p. 1 (emphasis added). Despite providing Plaintiff with two options on how to proceed, Defendants did not receive any response from Plaintiff for a full week.

Finally, on June 27, 2017, Plaintiff's counsel emailed Defendants a copy of Plaintiff's **first** Notices of Deposition to take Defendants' depositions on July 14, 2017 pursuant to FRCP 30(b)(6),[3] which was four days after the close of discovery. Lepore Decl., ¶ 7, Ex. H, p.1, 8. In reviewing the Notices of Deposition, the Certificates of Service stated they were just served that day.  Lepore Decl., ¶ 7, Ex. H, pp. 7, 15, 21.  Thirty minutes later, after the Notices of Deposition were sent, Plaintiff's counsel responded to Defendants' requests to reschedule Plaintiff's deposition. However, Plaintiff's counsel attempted to make the deposition of Plaintiff contingent on Defendants appearing for their depositions that Plaintiff had *just* noticed. Specifically, Plaintiff's counsel emailed Defendants and stated:

> I agree that [sic] short extension is appropriate. However, we have issued dep[osition] notices for AccountCorp's [sic] 30(b)(6) witness and . . . Langsdale. We need to get these set up. . . . Let me know if [sic] ok with extending the deadline to July 30th? [sic] If so, we will prepare a stip[ulation] to that effect.

Lepore Decl., ¶ 8, Ex. I, p. 1.

---

[3] All further reference to Rule(s) is to the Federal Rules of Civil Procedure unless otherwise stated.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

Because Plaintiff's counsel just noticed the depositions 30 minutes prior to this correspondence, Defendants did not stipulate to extending the date for Plaintiff to take these depositions. They were noticed just a mere 12 days (excluding a Court holiday) before discovery closed on July 10, 2017, served three days before a long holiday weekend, noticed for a date outside the close of discovery, and contained *over 29 topics of examination, all of which were copied and pasted from Plaintiff's other objectionably-overbroad discovery requests*. Clearly, Plaintiff's counsel intentionally waited to respond to Defendants until after Plaintiff noticed these depositions in a ploy to conduct untimely discovery.

Because Plaintiff failed to provide any dates for her deposition before discovery closed, and also rejected Defendants' offer to extend discovery solely to take Plaintiff and CRN's respective depositions, Defendants were faced with no choice but to re-notice Plaintiff's deposition. On June 28, 2017, Defendants served an Amended Notice of Deposition of Plaintiff for July 7, 2017 at 10:00 a.m., as had been proposed by Defendants more than two weeks earlier. Lepore Decl., ¶ 8, Ex. J, pp. 1-2.

Despite AcctCorp and P&E inadvertently mailing the Amended Notice of Deposition to Langsdale's counsel's prior address, it was forwarded by mail to Langsdale *and was still received on Monday, July 3, 2017*. Lepore Decl., ¶ 8. Yet, on July 6, 2017, at 6:28 p.m., the night before Plaintiff's deposition, Plaintiff's counsel's assistant emailed Langsdale, stating: "We received the attached notice of deposition . . . today, 7/6/2017 . . . Please be advised that Mr. Nelson and Ms. Cox will not be attending this deposition. . . ." Lepore Decl., ¶ 10, Ex. K, p.1. (emphasis in the original). Of course, Defendants found it implausible that Plaintiff's counsel just received the deposition notice on July 6, 2017 at 6:28 p.m., especially because Langsdale had received it by July 3, 2017, despite the error in addressing. Thus, on July 7, 2017, which was the Friday before discovery closed on Monday, July 10, 2017, Defendants recorded Plaintiff's non-appearance. Lepore Decl., ¶ 11, Ex. L.

**2.      Plaintiff Failed To Timely Respond To Defendants' Written Discovery Requests, And Plaintiff's Counsel Blatantly Misrepresented The Dates He Served Plaintiff's Belated Discovery Responses.**

On May 26, 2017, Defendants propounded and served by mail their First Set of Interrogatories, Requests for Production of Documents, and Langsdale's Requests for Admissions to Plaintiff. Lepore Decl., ¶ 12, Ex. M (Interrogs.), Ex. N (Requests for Production of Documents), and Ex. O (Requests for Admissions); Clement Decl., ¶ 3, Ex. LL (Interrogs.) and Ex. MM (Requests for Production of Documents). Pursuant to Rule 6 (computation of time), Plaintiff's responses were due by June 28, 2017. Finally, on June 27, 2017, at 5:16 a.m., the day before Plaintiff was to respond to the discovery Defendants propounded on May 26, 2017, Plaintiff's counsel emailed Langsdale and stated:

> . . . Defendant[s] served us with written discovery that is due today. The responses are almost finished. However, we need to speak with [Plaintiff] about a few issues. As I mentioned previously, she was out of town last week…AND we were not able to get in touch with her today. We would appreciate it if you would agree to a 1 week extension so that we can track her down and get her input; so that we do not need to send incomplete responses.

Lepore Decl., ¶ 13, Ex. P, p. 1.

Given that discovery was about to close, Langsdale did not agree to any extension. Moreover, on June 20, 2017, which was only a week prior, *Plaintiff's counsel emailed Defendants' respective counsel and stated he had spoken to Plaintiff about her deposition.* Because Defendants served their discovery on Plaintiff more than a month prior to Plaintiff's counsel's email, Plaintiff's counsel had ample opportunity to consult with Plaintiff about the accuracy of the responses he drafted purportedly on her behalf. Moreover, Plaintiff's counsel still had not responded to Defendants' request for dates of Plaintiff's availability for her deposition. AcctCorp and P&E did agree to the extension.

As such, Plaintiff was required to serve responses to Langsdale's requests by June 28, 2017, and to AcctCorp's and P&E's requests by July 5, 2017. Nevertheless, Defendants did not receive any responses to their written discovery prior to the close of discovery on July 10, 2017. Instead, on July 11, 2017, Defendants received various envelopes from Plaintiff's counsel in the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

mail. Strangely, none of the envelopes, to any defense counsel, contained any postmarks referencing the dates the documents were deposited in the mail. *See* Lepore Decl., ¶ 14, Ex. Q. In these envelopes, Defendants received Plaintiff's objections and responses to their respective Interrogatories and Request for Production of Documents. Lepore Decl., ¶ 14, Ex. R (Pl.'s Resp. to Langsdale's Interrogs.) and Ex. S (Pl.'s Resp. to Langsdale's RFPs); Clement Decl., ¶ 7, Ex. OO (Pl.'s Resp. to AcctCorp's and P&E's Interrogs.) and Ex. PP (Pl.'s Resp. to AcctCorp's and P&E's Requests for Production of Documents). However, the Certificates of Service for these documents, which were signed by Plaintiff's counsel, stated he deposited these responses *in the mail on July 3, 2017*. Lepore Decl., ¶ 14, Ex. R, p. 12, Ex. S, p. 9.

Thus, Plaintiff's counsel represented it took *six mailing days[4] for Plaintiff's responses to reach Defendants' counsel's offices*, which are a mere 10 and 20 miles away from Plaintiff's counsel's office, respectively. But, what made this representation more egregious was this: contained in one of the envelopes received by Langsdale's counsel was Plaintiff's "Second Supplemental Initial Discovery Disclosure," which had a *Certificate of Service signed by an assistant from Plaintiff's counsel's office and dated July 7, 2017*. Lepore Decl., ¶ 14, Ex. T, p. 9. It is highly doubtful, if not impossible, for Plaintiff's counsel to claim documents purportedly served by his office three mailing days apart arrive the same day to the same location. In addition, AcctCorp's and P&E's counsel received the Second Supplemental Disclosure on July 10, 2017, with the same July 7, 2017 Certificate of Mailing. Clement Decl., ¶ 6, Ex. T.  Furthermore, Plaintiff's responses to Defendants' Interrogatories contained no Verification signed under the penalty of perjury, as required by Rule 33(b)(3).

Notwithstanding this, on July 13, 2017, Langsdale received two more envelopes from Plaintiff's counsel. Contained in one of these envelopes was Plaintiff's Responses to Langsdale's Requests for Admission. Yet again, Plaintiff's counsel misrepresented on the Certificate of Service that he personally served this document by mail on July 3, 2017, *which is a full eight mailing days before Langsdale received it*. Lepore Decl., ¶ 16, Ex. U, p. 8. *However, this time the*

---

[4] This calculation excludes federal holidays and Sundays.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

*envelope contained a postmark, dated July 11, 2017*. Lepore Decl., ¶ 16, Ex. V. The second envelope Langsdale received in the mail on July 13, 2017, was Plaintiff's Notice of Taking Deposition of Amanda Patterson, an AcctCorp employee. Lepore Decl., ¶ 16, Ex. W. The Certificate of Service attached to that document, signed by an assistant from Plaintiff's counsel's office, *represented the document was served by mail on July 11, 2017*. Lepore Decl., ¶ 16, Ex. W, p. 3.  *The envelope also contained a postmark dated July 12, 2017*. Lepore Decl., ¶ 16, Ex. X. Again, it is impossible for Plaintiff's counsel to claim these two documents purportedly served by mail six mailing days apart arrived the same day to the same location.

> ### 3.    Plaintiff's Responses To Defendants' Written Discovery Are Wholly Inadequate And Shielded Evidence Of CRN's Involvement In This Action.

Putting aside Plaintiff's counsel misrepresentations regarding service of Plaintiff's responses to Defendants' written discovery, Plaintiff's responses to Defendants' discovery requests are wholly inadequate. For example, Interrogatory No. 3 and No. 4 from Langsdale requested Plaintiff to simply identify the section of the FDCPA she contended Langsdale violated by failing to serve a substitution of attorney form and dismissing the underlying collection action. Lepore Decl., ¶ 14, Ex. R, 5:7-13, 6:1-8. In response, Plaintiff objected that it required her to make a legal conclusion, failed to identify the sections, and refused listing the facts supporting her contention. Lepore Decl., ¶ 14, Ex. R, 5:15-26, 6:10. Plaintiff responded similarly to AcctCorp's and P&E's Interrogatory Nos. 17 - 20, which requested Plaintiff to identify what sections of Nevada's deceptive trade practices statute she alleged Defendants violated. Clement Decl., ¶¶ 8-10 , Ex. NN, pp. 9:26-10:22. Instead of complying, Plaintiff again claimed they required her to make legal conclusions and left Defendants to guess what she is actually alleging. *See id.*

In fact, despite Defendants narrowly drafting their Interrogatories to avoid overlapping topics, Plaintiff responded to many interrogatories by simply directing Defendants to read Plaintiff's inadequate responses to different interrogatories. *See* Lepore Decl., ¶ 14, Ex. R, 6:10-17, 7:8-14, 8:8-26, 9:18-10:10 (Pl.'s Resp. to Langsdale's Interrogs., No. 4, No. 5, No. 7, Nos. 10 – 12, Nos. 15 – 17); *see generally* Clement Decl., ¶¶ 7 & 11, Ex. NN (Pl.'s Resp. to AcctCorp's

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

and P&E's Interrogs. Nos. 1-3, 10, 15-20). Furthermore, even though Plaintiff's responses were received after discovery closed, Plaintiff refused to describe with specificity all economic damages she sustained, simply claiming: "Plaintiff is in the process of determining her economic damages. Discovery is continuing . . . . " Lepore Decl., ¶ 14, Ex. R, 10:11-16 (Pl.'s Resp. to Interrog. No. 18); *see also* Clement Decl., ¶¶ 7 & 11, Ex. NN , 8:1-9:6. Clearly, these responses are deficient.

Plaintiff's discovery responses also contained misrepresentations and withheld documents to shield CRN's involvement in this action. For example, Langsdale's Interrogatory No. 14 requested Plaintiff to identify the entity or individual that referred Plaintiff to her counsel. Lepore Decl., ¶ 14, Ex. R, 9:8-13. Yet, notwithstanding signing the POA with CRN, Plaintiff's response states: "no entity or individual referred me to [Plaintiff's counsel]." Lepore Decl., ¶ 14, Ex. R, 9:16-17.  This misrepresentation is just one of many. Langsdale's Interrogatory No. 16 asked Plaintiff to describe with specificity all services CRN promised to provide Plaintiff regarding her debt. Lepore Decl., ¶ 14, Ex. R, 9:23-25. Plaintiff's response stated "see response to Interrogatory #8." Lepore Decl., ¶ 14, Ex. R, p. 9:28-10:1. But Plaintiff's response to Langsdale's Interrogatory No. 8 simply stated that Jacobs told Plaintiff "he could not help her and she needed to hire an attorney . . . . " Lepore Decl., ¶ 14, Ex. R, 7:21-22. Again, this is false, as the POA listed many services CRN promised to provide Plaintiff, including filing this suit.

Plaintiff also failed to disclose and produce relevant documents relating to CRN. Langsdale's Interrogatory No. 17 requested Plaintiff to identify all documents or written correspondences, including emails, between Plaintiff and CRN. Lepore Decl., ¶ 14, Ex. R, 10:2-5. Obviously, the POA falls into this category of documents. But in response to the subpoena served on CRN, Defendants also received one additional document not mentioned yet – an email from Jacobs to Plaintiff dated October 31, 2017, wherein Jacobs stated he would refer Plaintiff to an attorney and that CRN was anxious to get started on this case. Lepore Decl., ¶ 17, Ex. Y, p. 1. The email also stated "Good afternoon [Plaintiff], thanks for your time and patience today—I've been somewhat out of pocket," which indicates additional communications between Plaintiff and Jacobs occurred. Lepore Decl., ¶ 17, Ex. Y, p. 1. Nevertheless, Plaintiff denied any documents

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

existed, stating "[t]here are no documents or written correspondences, including emails, between Plaintiff and [CRN]." Lepore Decl., ¶ 14, Ex. R, 10:9-10.

These falsehoods carry over to Plaintiff's responses to Langsdale's Requests for Production of Documents. For instance, Langsdale's Request No. 4 required Plaintiff to "produce all communications between [Plaintiff] and [CRN] regarding [her] debt." Lepore Decl., ¶ 14, Ex. S, 4:20-23. Of course, Plaintiff claimed none existed, stating "Plaintiff is not aware of any communications between her and [CRN]." Lepore Decl., ¶ 14, Ex. S, 4:26-28. The next five Requests for Production required Plaintiff to produce any document that she received from CRN, or that Plaintiff provided to CRN. Lepore Decl., ¶ 14, Ex. S, 5:1-26. Plaintiff's response to each request was "[s]ee response to Request No. 4." Lepore Decl., ¶ 14, Ex. S, 5:1-6:1. Conversely, in response to AcctCorp's and P&E's various requests for documents relating to CRN, Nos. 22-26, Plaintiff objected that the requests are "irrelevant because [they] seek[] information that is not relevant to plaintiff's claims and defendants' defenses." Clement Decl., ¶ 13, Ex. OO 8:12-9:10.

Simply stated, Plaintiff and her counsel have shielded documents relating to CRN, which has severely prejudiced Defendants' defense.

### 4. Plaintiff Failed To Timely Disclose Damages, Documents, and Evidence.

Besides the discovery abuses cited above, Plaintiff has made belated disclosures of damages, documents, and witnesses. On February 2, 2017, Plaintiff made her initial disclosures, in which she did not disclose CRN or Jacobs, failed to identify any general damages, failed to make any estimate of her claimed "Attorneys (sic) Fees and Costs," simply stating instead, "TBD," and only listed two documents to support her case: (1) the underlying collection action complaint, and (2) the notice of dismissal with prejudice in Plaintiff's favor. Lepore Decl., ¶ 18, Ex. Z, 3:11-4:5.

Because general damages and attorney's fees and costs are often the highest awarded category of damages in FDCPA actions, on February 21, 2017, Langsdale asked Plaintiff to provide a complete computation of damages. Lepore Decl., ¶ 18, Ex. AA, p.2-3. Specifically, Langsdale asked Plaintiff to confirm she was not seeking general damages, or supplement her

disclosures with a reasonable estimate of her general damages and attorney's fees and costs by March 3, 2017. Lepore Decl., ¶ 18, Ex. AA, p. 2. Plaintiff, however, did not make her first supplemental disclosure until March 20, 2017. Lepore Decl., ¶ 18, Ex. BB, p. 6. Moreover, Plaintiff identified twelve new witnesses from the State of Nevada, Department of Business & Industry, but provided no information regarding the subject of their expected testimony, and has yet to do so. Lepore Decl., ¶ 18, Ex. BB, pp. 2-3. Furthermore, Plaintiff still had not disclosed Jacobs or CRN. Lepore Decl., ¶ 18, Ex. BB.

Finally, on July 7, 2017, the Friday (three days) before the close of discovery, Plaintiff made a second supplemental disclosure. Lepore Decl., ¶ 14, Ex. T. For the first time, Plaintiff disclosed Jacobs, CRN, and the POA she executed. Lepore Decl., ¶ 14, Ex. T, 5:7-9, 6:9-10. But besides these untimely disclosures, *Plaintiff also supplemented her initial disclosures three more times <u>after</u> the close of discovery, identifying new witnesses and documents never disclosed*. First, on July 14, 2017, Plaintiff identified in her third supplement to her initial disclosures sixteen new witnesses, including nine witnesses of which Langsdale had no prior knowledge. Lepore Decl., ¶ 19, Ex. CC, 5:22-8:6. Moreover, Plaintiff simply listed these new witnesses' addresses and omitted any description of their expected testimony. *Id.* Next, on July 27, 2017, Plaintiff identified in her fourth initial disclosure[5] "a summary of redacted invoices [ . . .] for legal fees charged by the Law Office of Vernon Nelson through June 30, 2017," which she never identified in any form in her previous disclosures. Lepore Decl., ¶ 20, Ex. DD, 10:1-3. Thereafter, Plaintiff made her fifth supplement to her initial disclosures and identified "[a]ll Pleadings filed in *RE: Richland Holdings, Inc. v. Paul Advent*, Case No. A-15-715520-C," a case P&E had no prior knowledge about, and which appears to have no relevance to this case. Lepore Decl., ¶ 21, Ex. EE, 9:26-28. Clearly, these belated disclosures do not comply with the Rules and prejudice Defendants' ability to prepare their defenses.

---

[5] Plaintiff erroneously labeled her fourth supplement to her initial disclosures as her fifth supplement.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

**5.      Plaintiff Failed To Respond To Defendants' Request To Take Her Deposition Outside The Close Of Discovery, Will Not Stipulate To Extending The Dispositive Motion Deadline, And Untimely Verified Her Responses To Defendants' Interrogatories.**

After Plaintiff failed to appear for her deposition, twice, and did not timely and substantively respond to Defendants' discovery requests, on July 14, 2017, Langsdale wrote to Plaintiff and identified the issues recited above.[6] Lepore Decl., ¶ 22, Ex. FF. Specifically, Langsdale informed Plaintiff that her failure to appear for her deposition, to timely respond to Langsdale's written discovery, and to verify her responses to Langsdale's Interrogatories had prejudiced Langsdale's defense. Lepore Decl., ¶ 22, Ex. FF, p. 4-5. Moreover, Langsdale informed Plaintiff that her and her counsel's conduct warranted terminating sanctions, as discovery had closed. Lepore Decl., ¶ 22, Ex. FF, p. 1. Yet, despite informing Plaintiff of her discovery abuses, Defendants received no response from Plaintiff. Lepore Decl., ¶ 22.

Accordingly, on July 21, 2017, Langsdale again wrote to Plaintiff. Lepore Decl., ¶ 23, Ex. GG. Given that dispositive motions were due on August 9, 2017, Langsdale recited Defendants' efforts to take Plaintiff's deposition and requested Plaintiff to stipulate to taking her deposition outside the close of discovery, on July 28, 2017. Lepore Decl., ¶ 23, Ex. GG, p. 3. Moreover, Langsdale asked Plaintiff to extend the parties deadline to file dispositive motions to accommodate her deposition testimony. *Id.* However, Plaintiff failed to oblige, much less even respond to any defense counsel regarding this simple request. Lepore Decl., ¶ 23.

In addition, on July 31, 2017, AcctCorp and P&E again asked Plaintiff's counsel to provide verifications to Plaintiff's responses to their Interrogatories. In response, Plaintiff's counsel simply stated: "[W]e are working on this. [Plaintiff is] difficult . . . to get hold of . . . ." Clement Decl., ¶ 15, Ex. HH, p. 1-2. Finally, on August 3, 2017, Plaintiff's counsel's assistant emailed Defendants a document entitled Verification, which purportedly verified Plaintiff's responses to AcctCorp's Interrogatories, ***but it was signed by Jacobs***. Clement Decl., ¶ 19, Ex. II, p. 4. Then, the next day, Defendants received new Verifications from Plaintiff for her responses

---

[6] AcctCorp and P&E understood Langsdale's communications to be based, in part, on the discovery abuses relating to AcctCorp's and P&E's efforts and, therefore, anticipated that a meet and confer with Plaintiff's counsel would involve counsel for all Defendants. Clement Decl., ¶ 14.

to AcctCorp's and Langsdale's Interrogatories, respectively. This time, however, they contained Plaintiff's purported signature in electronic form. Lepore Decl., ¶ 24, Ex. JJ, p. 6; Clement Decl., ¶ 17 , Ex. JJ, p. 4. Given that these Verifications were strange, untimely, and confirmed Plaintiff was not participating in this action, Defendants brought this Motion to terminate this action.

## III.    LEGAL ARGUMENT

### A.    This Court Should Dismiss Plaintiff's Action For Her Egregious Discovery Abuses.

Under Rule 30(b)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court . . . ." Fed. R. Civ. P. 30. "Absent a protective order or an order staying the deposition, the party to be deposed is required to appear for a properly noticed deposition." *Anoruo v. Shinseki*, Case No. 2:12-cv-1190-JCM-GWF, 2013 WL 4546759 at* 2 (D. Nev. August 27, 2013) (citing *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976)). Simply stated, "[t]he noticed party does not have the option of sitting back, failing to appear, requiring the noticing party to take action, and then crying foul to the court." *Koninklijke Philips Electronics N.V. v. KXD Tech., Inc.*, Case No. 2:05–cv–1532–RLH–GWF, 2007 WL 3101248, at * 18 (D. Nev. Oct. 16, 2007)

If a party fails to attend his or her noticed deposition, a party may move the Court to order sanctions pursuant to Rule 37(b)(2)(A)(i)-(vi). *See* Fed. R. Civ. P. 37(d)(1) and (3). According to Rule 37(b)(2)(A)(v), this Court may dismiss the action or proceeding. Fed. R. Civ. P. 37(b)(2)(A)(v). Under the Ninth Circuit's precedent, this Court should consider five factors to determine whether case-dispositive sanctions under Rule 37 are warranted: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir.2012).

The test, however, only provides this Court with a "way to think about what to do rather than a set of conditions precedent for imposing sanctions." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.1998). This is because a court has "great latitude" in fashioning

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

sanctions pursuant to Rule 37. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985). But this Court must find that Plaintiff's non-compliance was willful, her fault, or in bad faith to impose case-dispositive sanctions. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993). In the context of case-dispositive sanctions, the "willfulness" or "bad faith" requirement is satisfied if the Court finds the disobedient conduct is not outside the control of the litigant. *Id.* at 983.

In making this determination, this Court may consider all of Plaintiff's discovery abuses. *Id.* The Ninth Circuit has also specifically encouraged dismissal when a party's counsel willfully or in bad faith in failed to comply with rules of discovery or in flagrant disregard of those rules. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (holding "[the] argument that an order to compel discovery is a prerequisite to dismissal is without merit"). Based on the following factors discussed below, this Court should dismiss Plaintiff's action for her repeated discovery abuses.

### 1.    The Public Interest In Expeditious Resolution Favors Dismissal Of Plaintiff's Complaint Against Defendants.

As Rule 1 contemplates, the public has an overriding interest in securing "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Indeed, the Ninth Circuit has stated the "[o]rderly and expeditious resolution of disputes is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (hereinafter, "*PPA*"). Here, Plaintiff has habitually failed to respond to Defendants' discovery efforts. Specifically, her decision to not appear, twice, for her noticed deposition is incompatible with Rule 1. In addition, Plaintiff's failure to: (1) verify her responses to Defendants' Interrogatories, (2) produce relevant evidence and documents, and (3) timely disclose witnesses and documents have precluded an expeditious resolution of this case and have severely prejudiced Defendants. Consequently, Plaintiff's discovery abuses have caused Defendants to incur unnecessary expenses, which necessitate terminating sanctions.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

2.    **This Court's Need To Manage Its Docket Weighs In Favor Of Dismissing Plaintiff's Complaint Against Defendants.**

This Court has the inherent power to manage its docket. *See, e.g., Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). The need for this Court to control its docket is substantially recognized in Rule 16, which authorizes this Court to sanction any party or its attorney for violating the Court's scheduling order, *including dismissing the action under Rule 37(b)*. Fed. R. Civ. P. 16(f); *see also Dreith v. Nu Image, Inc*., 648 F.3d 779, 787 (9th Cir. 2011) (discussing the breadth of the Court's power in sanctioning discovery abuses like Plaintiff's in this case). The Supreme Court has further recognized that case-dispositive sanctions serve the purpose of controlling a court's docket by deterring others tempted to engage in similar conduct. *See Nat'l Hockey League v. Metro. Hockey Club, Inc*., 427 U.S. 639, 643 (1976) (holding that sanction of dismissal was appropriate due to "flagrant bad faith" and "callous disregard" of the party's and its counsel's responsibilities). Plaintiff's discovery abuses similarly warrant dismissal.

Specifically, Plaintiff's failure to appear for her deposition, timely and substantively respond to Defendants' written discovery, and timely disclose her damages, witnesses, and documents violates this Court's Scheduling Order in multiple ways. Plaintiff has violated this Court's deadline to make complete disclosures and precluded Defendants from filing dispositive motions and submitting a pre-trial scheduling order. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (affirming dismissal because plaintiff failed to attend a scheduled deposition). To cure the discovery abuses in this case, this Court will have to reopen discovery and reset every Court imposed deadline affected by the extended discovery period.  This will also delay trial, impacting this Court's ability to effectively manage its docket. Simply put, Plaintiff's conduct "greatly imped[es] resolution of the case and prevent[s] [this Court] from adhering to its [Scheduling Order]." *Id*.

Moreover, dismissing Plaintiff's action will deter Plaintiff's counsel from engaging in similar conduct in the *41 active cases* he has filed since August 2016 related to the FDCPA or Fair Credit Reporting Act, which is clogging this District's judicial system. *See* Lepore Decl., ¶ 25, Ex. KK; *see also Nat'l Hockey League*, 427 U.S. at 643. Thus, by dismissing Plaintiff's

action, this Court will effectively put Plaintiff's counsel on notice that this behavior is unacceptable. As such, this factor weighs heavily in favor of dismissing Plaintiff's case.

### 3.      Plaintiff's Actions Have Prejudiced Defendants' Defense In This Action.

The Ninth Circuit has held that to issue terminating sanctions, this Court must find Plaintiff's actions prejudiced Defendants' ability to prepare for trial or threaten to interfere with the rightful decision of this case. *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 591 (9th Cir. 1983) (citation omitted). Here, Plaintiff's actions undeniably prejudice Defendants' defense of this case.

First, Plaintiff's decision to skip her deposition twice precluded Defendants from eliciting testimony from Plaintiff regarding the facts of her claims. Her interactions with AcctCorp's and Langsdale's employees are highly pertinent to her FDCPA claims. In fact, the basis for many of her claims will depend on her credibility, as she is alleging Defendants made misrepresentations to her about her debt, engaged in abusive and harassing conduct to collect the debt, and communicated with her about her debt, which triggers certain statutory duties under the FDCPA. *See* ECF No. 24 (Langsdale's Mot. for J. on the Pleadings). Given that Defendants dispute all of these allegations, Plaintiff's failure to appear at her deposition precluded Defendants from conducting discovery on these claims. *See Henry*, 983 F.2d at 947-48 (holding the plaintiff's failure to appear for his deposition prejudiced the defendants from preparing a defense). Furthermore, the Ninth Circuit has recognized that a plaintiff's repeated failure to appear for his or her scheduled deposition before discovery closes interferes with the rightful decision of the case. *See Hyde*, 24 F.3d at 1167.

In addition, Plaintiff's failure to personally verify her interrogatory responses in a timely manner has precluded Defendants from using these interrogatories to impeach her credibility. Pursuant to FRCP 33, "[t]he person who makes the answers [to the interrogatories] must sign them, and the attorney who objects must sign any objection." Fed. R. Civ. P. 33(b)(5). "This requirement is critical because 'interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party

- 17 -

opponent, which is admissible because it is not hearsay, than an answer to an interrogatory.'" *Huthnance v. D.C.*, 255 F.R.D. 297, 300 (D.D.C. 2008) (citations omitted). Because Plaintiff's purported Verification came 24 days after discovery closed, her responses were worthless in Defendants' pursuit of the truth to defend this action. As such, Plaintiff has prejudiced Defendants' defense of this case, particularly in light of her refusal to participate in a deposition.

Moreover, Plaintiff's decision to withhold pertinent information and documents regarding her and her counsel's relationships with CRN deprived Defendants from developing discovery on whether Plaintiff has brought this action in bad faith. Specifically, the FDCPA states: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). Given this, Plaintiff and her counsel's relationships with CRN are highly pertinent to Defendants' defense, especially because Plaintiff's counsel executed a separate "Engagement Letter" with CRN. But despite propounding numerous discovery requests on this subject, the interrogatory responses Plaintiff's counsel drafted concealed all relevant information related to his and Plaintiff's relationships with CRN. Moreover, Plaintiff's counsel claimed she was not aware of any communications or documents involving CRN, which is simply not true. *See* Lepore Decl., ¶ 14, Ex. R, 10:9-10. Plaintiff's counsel has also refused to produce the "Engagement Letter" with CRN, which will likely establish that CRN has a monetary interest in this action. As such, Plaintiff has prejudiced Defendants' ability to prove CRN and Plaintiff's counsel filed this action in bad faith.

Finally, Plaintiff's inadequate and belated disclosures have prejudiced Defendants' ability to depose witnesses and evaluate its defense strategy. Principally, Plaintiff's decision to identify 16 new witnesses, including nine witnesses that Langsdale had no prior knowledge of is highly improper. Obviously, Plaintiff's decision to defer identifying these witnesses until after discovery foreclosed Defendants' from examining them under oath before trial. Moreover, Plaintiff failed to describe what these witnesses have knowledge of, leaving Defendants to speculate what testimony Plaintiff intends to introduce at trial. *See* Fed. R. Civ. P. 26(a)(1)(i).

Additionally, Plaintiff waited until discovery closed to identify documents to support her

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

entitlement to attorney's fees, precluding Defendants from examining these documents. Plaintiff also identified an entire unrelated case, entitled *Richland Holdings, Inc. v. Paul Advent*, Case No. A-15-715520-C," after discovery closed. Of course, P&E had no prior knowledge about that case and cannot inquire with Plaintiff how she will use this case to support her claims. Clearly, Plaintiff's actions have prejudice Defendants' defense to such a degree that it militates in favor of dismissing this action.

> **4.   Public Policy Does Not Justify Denying Defendants' Request For Case-Dispositive Sanctions.**

Cases that are stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot reach a decision on the merits. *See PPA*, 460 F.3d at 1228. As such, the Ninth Circuit has held that public policy favoring disposition of cases on their merits "lends little support" to a plaintiff avoiding case dispositive sanctions. *Id*. This is because the plaintiff has the responsibility to move the case toward disposition on the merits. *Id* (citing *In re the Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996) (finding the plaintiffs' total refusal to provide discovery obstructed resolution of their claims on the merits)).

Applying this standard here, this factor weighs in favor of dismissal because the discovery abuses Plaintiff committed were entirely of her own making. She alone failed to participate in discovery and obstructed Defendants' ability to prepare a defense. By doing so, she interfered with this Court's ability to oversee that this action is decided on the merits, causing doubt in the judicial process. As such, she has manipulated these proceedings and deprived Defendants the opportunity to discover facts supporting their defenses. *See Greene v. Wal-Mart Stores, Inc.,* No. 2:15-cv-677-JAD-NJK, 2016 WL 829981, at *7 (D. Nev. Jan. 26, 2016) (finding that plaintiff's untimely disclosure of information "deprived Defendant of th[e] opportunity" to develop an appropriate strategy for discovery and trial preparation), *report and recommendation adopted*, 2016 WL 829977 (D. Nev. Mar. 13, 2016) (dismissing action because the plaintiff "consistently refused to comply with her discovery obligations").  Given Plaintiff's dilatory tactics, withholding of evidence, and misrepresentations, this Court should dismiss Plaintiff's action.

**5.** **This Court Cannot Cure The Prejudice Plaintiff's Discovery Abuses Have Caused Defendants By Imposing Lesser Sanctions.**

Prior to dismissing Plaintiff's action, this Court must consider the adequacy of less drastic sanctions to cure the prejudiced Plaintiff caused Defendants to sustain. *See PPA*, 460 F.3d at 1228. The Ninth Circuit has provided further guidance on this requirement, listing three factors this Court should consider: (1) the feasibility and adequacy of less drastic sanctions; (2) whether the court tried lesser sanctions; and (3) whether the court provided notice about the possibility of case-dispositive sanctions. *Id*. at 1228-29. However, with regards to the last two factors, the Ninth Circuit has stated it is not always necessary to impose lesser sanctions, or provide explicit warning that this Court will impose case-dispositive sanctions. *Valley Eng'rs Inc. v. Elec. Eng'g Co*., 158 F.3d 1051, 1056-57 (9th Cir.1998) (holding that a party is not "entitled to a warning … before dismissal could be an appropriate sanction" because "everyone has notice from the text of Rule 37(b)(2) that dismissal is a possible sanction"); *see also Hester*, 687 F.3d at 1170 (holding that "additional lesser sanctions would be pointless because it is appropriate for a district court to reject lesser sanctions where the court anticipates continued deceptive misconduct") (citations, internal quotation marks, and alterations omitted); *PPA*, 460 F.3d at 1229 (holding a warning is not required when dismissal is in response to a noticed motion). Moreover, in *Sigliano v. Mendoza*, 642 F.2d 309 (9th Cir. 1981), the Ninth Circuit held that an order to compel discovery is <u>not</u> a prerequisite to dismissal. *Id.*, at 310 (citations omitted). Specifically, the court stated "[d]ismissal is a proper sanction under Rule 37(d) *for a serious or total failure to respond to discovery even without a prior order*," which has occurred here. *Id*. (emphasis added).

In this instance, sanctions less than dismissal will not cure the prejudice Plaintiff has caused Defendants. As discussed above, Plaintiff's actions have drastically interfered with Defendants' conducting even the most basic discovery into her claims and to support their defenses. She has purposely withheld evidence and documents, not timely verified her interrogatory responses, and failed to appear for her deposition twice. As such, Defendants are not even sure that Plaintiff is participating in this action, *making it quite possible that Plaintiff's counsel and CRN are simply using Plaintiff's name at this point to extort monies from Defendants*

in an anti-competitive scheme. In addition, Plaintiff (or, rather, her counsel) disclosed over sixteen new witnesses after discovery closed and has not identified the subjects of these witnesses' knowledge.

Even if this Court compelled Plaintiff to attend her deposition, produce all documents related to CRN, and exclude all untimely disclosure of witnesses and evidence, it does not cure the effects of Plaintiff's discovery misconduct. *See N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (affirming dismissal because "Belated compliance with discovery orders does not preclude the imposition of sanctions."); *G–K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647–48 (9th Cir. 1978) (affirming dismissal because "last minute tender" of discovery does not cure effects of discovery misconduct). Indeed, last-minute tender of documents or disclosure of witnesses and evidence "does not cure the prejudice to opponents[,] nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Id.* Moreover, at every juncture Plaintiff's counsel made numerous excuses to justify Plaintiff's failure to comply with her discovery obligations. And perhaps more egregiously, Plaintiff's counsel purposely misrepresented the date he served Plaintiff's "draft" responses to Defendants' written discovery.[7]

Thus, Plaintiff's "repeated failure[s] to comply with her discovery obligations and the Court's scheduling order manifests sufficient fault to justify dismissal here." *Greene*, 2016 WL 829981, at *8.

**B.    This Court Should Also Impose Monetary Sanctions Against Plaintiff And Her Counsel.**

In addition to case-dispositive sanctions, the Court "must require the party [failing to appear for the noticed deposition] to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Because Plaintiff failed to appear for her

---

[7] The fact that Plaintiff's counsel and CRN may be entirely responsible for these discovery abuses is inconsequential to this Court's decision. *See, e.g.*, *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387 (9th Cir.1988) (holding that "dismissal of petitioner's claim because of his counsel's unexcused conduct imposes [no] unjust penalty on the client") (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962)).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

deposition, Defendants requests this Court to require Plaintiff's counsel to pay Defendants' costs and attorney's fees to record Plaintiff's non-appearance, and the attorney's fees Defendants incurred to draft and file this Motion. Based on the fees incurred to date and a reasonable estimate of the fees Defendants will incur to draft a Reply and attend a hearing on this Motion, Defendants request this Court to sanction Plaintiff and Plaintiff's counsel in the amount of $23,240.25. Lepore Decl., ¶ 28, Ex. PP; Clement Decl., ¶ 25, Ex. QQ.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants move this Court to dismiss Plaintiff's Complaint and impose monetary sanctions against Plaintiff and her counsel.

Dated:     August 21, 2017          ROPERS, MAJESKI, KOHN & BENTLEY


By: /s/ *Timothy J. Lepore*
          Stephen J. Erigero, Esq.
          Nevada Bar No. 11562
          Timothy J. Lepore, Esq.
          Nevada Bar No. 13908
          3753 Howard Hughes Pkwy., Suite 200
          Las Vegas, Nevada 89169
          *Attorneys for Defendant*
          *THE LANGSDALE LAW FIRM, P.C.*

Dated:     August 21, 2017          MARQUIS AURBACH COFFING


By: /s/ *Chad F. Clement*
          Terry A. Coffing, Esq.
          Nevada Bar No. 4949
          Chad F. Clement, Esq.
          Nevada Bar No. 12192
          Jared M. Moser, Esq.
          Nevada Bar No. 13003
          10001 Park Run Drive
          Las Vegas, Nevada 89145
          *Attorneys for Defendants*
          *RICHLAND HOLDINGS, INC. d/b/a/*
          *ACCTCORP OF SOUTHERN NEVADA and*
          *PARKER & EDWARDS, INC.*

**CASE NAME:**     **Cox v. Richland Holdings, et al.**

**ACTION NO.:**     **2:16-cv-02914-APG-VCF**

**CERTIFICATE OF SERVICE**

**METHOD OF SERVICE**

☐ First Class Mail     ☐ Facsimile     ☐ Messenger Service

☐ Overnight Delivery     ☒ E-Mail/Electronic Delivery

  At the time of service I was over 18 years of age and not a party to this action and a Citizen of the United States.

  My business address is 445 South Figueroa Street, Suite 3000, Los Angeles, CA  90071-1619, County of Los Angeles.

  On August 21, 2017, I served the following documents:

**DEFENDANTS' JOINT MOTION FOR CASE DISPOSITIVE SANCTIONS AND MONETARY SANCTIONS**

by the Electronic Case Filing system for the United States District Court, District of Nevada.

  I am employed in the office of a member of the bar of this court at whose direction the service was made.  I certify under penalty of perjury that the foregoing is true and correct.

Date:   August 21, 2017

Elizabeth Avila          /s/ *Elizabeth Avila*
Type Name            Signature

Ropers Majeski Kohn & Bentley
A Professional Corporation
Las Vegas

- 23 -