STEPHEN J. ERIGERO
Nevada Bar No. 11562
TIMOTHY J. LEPORE
Nevada Bar No. 13908
ROPERS, MAJESKI, KOHN & BENTLEY
3753 Howard Hughes Pkwy., Suite 200
Las Vegas, Nevada 89169
Telephone: (702) 954-8300
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
timothy.lepore@rmkb.com

Attorneys for Defendant
THE LANGSDALE LAW FIRM, P.C.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LINDA COX,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RICHLAND HOLDINGS, INC. d/b/a/ ACCOUNT CORP OF SOUTHERN NEVADA, a Nevada Corporation, PARKER & EDWARDS, INC., a Nevada Corporation, and THE LANGSDALE LAW FIRM, P.C., a Nevada professional corporation,<br><br>　　　　Defendants. | Case No. 2:16-cv-02914-APG-VCF<br><br>**DECLARATION OF TIMOTHY J. LEPORE IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR CASE DISPOSITIVE SANCTIONS AND MONETARY SANCTIONS**<br><br>Judge: Andrew P. Gordon |

4829-0734-6509.5

I, Timothy J. Lepore, declare as follows:

1. I am an attorney at the law firm of Ropers Majeski, Kohn & Bentley, and counsel for Defendant The Langsdale Law Firm, P.C. in this action. I am a member in good standing of the State Bar of Nevada, the State Bar of California, and this Court. I have personal knowledge of the facts stated herein and familiar with the documents and information referred to below. If called as a witness, I would competently testify to the following facts, all of which are within my own personal knowledge.

A. **Plaintiff's Counsel's Relationship With Safeguard Credit LLC, dba Credit Restoration of Nevada.**

2. After this lawsuit was filed, I obtained an email between Harry Jacobs, CEO/President of Safeguard Credit LLC, dba Credit Restoration of Nevada (CRN) and Vernon Nelson, who is Plaintiff's counsel of record in this action. The email is dated August 5, 2016 and demonstrates that Mr. Nelson and CRN are soliciting individuals to file actions against collection agencies, such as Richland Holdings, Inc., based on the Fair Debt Collection Practices Act. In this email, Mr. Jacobs drafted prospective language for solicitation emails to individuals that CRN identified by searching public records from the Las Vegas Justice Court. The proposed solicitation email claims CRN can help these individuals with their legal issues at no costs to them and that they might be entitled to statutory damages of $1,000 under the Fair Debt Collection Practices Act. Attached as **Exhibit A** to the Index of Exhibits is a copy of this email.

3. On July 26, 2017, the deposition of Wendoly Geraldo and Dany Geraldo was taken in the matter *Geraldo v. Richland Holdings, Inc.*, Case No. 2:17-cv-00015-JCM-PAL. Nelson represents both these individuals as plaintiffs. The pertinent excerpts from the Geraldos' testimony corroborate that CRN is soliciting individuals to file lawsuits against collection agencies, and then CRN is referring/retaining Mr. Nelson to file these lawsuits. Attached as **Exhibit B** to the Index of Exhibits is a certified transcript of the deposition of Wendoly Geraldo in the matter *Geraldo v. Richland Holdings, Inc.*, Case No. 2:17-cv-00015-JCM-PAL. Attached as **Exhibit C** to the Index of Exhibits is a certified transcript of the deposition of Dany Geraldo in the matter *Geraldo v. Richland Holdings, Inc.*, Case No. 2:17-cv-00015-JCM-PAL.

4. On June 23, 2017, I received a Durable Limited Power of Attorney and Acknowledgement of Engagement/Representation that Plaintiff purportedly executed in response to a Subpoena to Produce Documents that Richland Holdings, Inc. and Parker & Edwards (collectively, "Richland") served on CRN. The documents effectively abrogate Plaintiff's authority to control or settle this action, transferring that authority to CRN. Attached as **Exhibit D** to the Index of Exhibits is a true and correct copy of the Durable Limited Power of Attorney. Attached as **Exhibit E** to the Index of Exhibits is a true and correct copy of the Acknowledgement of Engagement/Representation.

**B.     Defendants' Documented Efforts To Take Plaintiff's Deposition**

5. On May 24, 2017, I contacted Richland's counsel, Chad Clement, and we coordinated our dates of availability to take Plaintiff's deposition. Accordingly, on May 25, 2017, Richland served a Notice of Deposition of Plaintiff Linda Cox. The Notice of Deposition required Plaintiff to appear for her deposition on June 23, 2017 at 10001 Park Run Drive, Las Vegas, Nevada. The Certificate of Service states the Notice of Deposition was served by mail on May 25, 2017 to Mr. Nelson's office address, 9480 South Eastern Avenue, Suite 244. Attached as **Exhibit F** to the Index of Exhibits is a true and correct copy of the Notice of Deposition of Plaintiff Linda Cox.

6. About a month later, on June 20, 2017, I received an email from Mr. Nelson. In this email, Mr. Nelson claimed Plaintiff could not appear for her scheduled deposition because she needed to travel out of state for work. After I consulted with Clement about what options Defendants could take to accommodate Plaintiff, Mr. Clement emailed Mr. Nelson and offered to move Plaintiff's deposition back to July 6th or 7th, or to extend discovery for the sole purpose of taking Plaintiff and CRN's depositions, as CRN also failed to appear on June 28, 2017 for its scheduled deposition. Attached as **Exhibit G** to the Index of Exhibits are true and correct copy of these email correspondences dated June 20, 2017. Mr. Nelson did not respond to this email for seven days.

7. A week later, on July 27, 2017, I received two emails from Melanie Nelson, a

1  family relative and assistant to Mr. Nelson, which contained copies of Plaintiff's first Notices of
2  Deposition to take Defendants' depositions on July 14, 2017 pursuant to FRCP 30(b)(6), *which*
3  *was four days after the close of discovery*. For each Notice of Deposition, Plaintiff listed over
4  twenty-nine examination topics that Plaintiff simply copied and pasted from her other overly
5  broad discovery requests. In addition, the Certificates of Service for these deposition notices
6  stated that Mr. Nelson's office served these Notices of Deposition that same day by mail.
7  Attached as **Exhibit H** to the Index of Exhibits are true and correct copy of the email
8  correspondences from Melanie Nelson and the Notices of Depositions I received by email and
9  mail.

10        8.      Thirty minutes after receiving the Notices of Deposition by email, I received an
11  email from Mr. Nelson. In the email, Mr. Nelson agreed to Defendants taking Plaintiff's
12  deposition outside the close of discovery, but made it contingent on Defendants appearing for the
13  depositions he just noticed outside the close of discovery. Attached as **Exhibit I** to the Index of
14  Exhibits is a true and correct copy of this email from Mr. Nelson to Mr. Clement and I, dated
15  June 27, 2017.  Given that these Notices of Deposition were served twelve days before the close
16  of discovery, noticed for a date outside the close of discovery, and contained numerous topics of
17  examination, I did not agree to Plaintiff's proposition.

18        9.      Left with no other option, Mr. Clement and I decided to re-notice Plaintiff's
19  deposition before discovery closed. Accordingly, on June 28, 2017, Richland served by mail an
20  "Amended Notice of Deposition of Plaintiff Linda Cox", scheduling her deposition for July 7,
21  2017. This document was mailed to my firm's prior address, but a former colleague forwarded it
22  by mail to my firm's current address. Thus, on July 3, 2017, I received the Amended Notice of
23  Deposition of Plaintiff. Attached as **Exhibit J** to the Index of Exhibits is a true and correct copy
24  of the Amended Notice of Deposition of Plaintiff Linda Cox.

25        10.     On July 6, 2017, the night before Plaintiff's deposition was to take place, I
26  received an email from Melanie Nelson at 6:28 p.m. The email stated that Mr. Nelson's office just
27  received the Amended Notice of Deposition of Plaintiff and that neither Mr. Nelson nor Plaintiff
28  would attend the deposition scheduled to take place tomorrow at 10:00 a.m. Attached as **Exhibit**

4829-0734-6509.5        - 4 -

**K** to the Index of Exhibits is a true and correct copy of this email from Melanie Nelson dated July 6, 2017.

11.     Because Plaintiff refused to appear for her deposition a second time, on July 7, 2017, Defendants proceeded to record Plaintiff's non-appearance. Therefore, I appeared at Plaintiff's deposition, which was located at Mr. Clement's office (10001 Park Run Drive, Las Vegas, Nevada). Attached as **Exhibit L** to the Index of Exhibits is a certified copy of the transcript for Plaintiff's deposition, which recorded her non-appearance.

### C. Mr. Nelson's Misrepresentation Of The Date He Served Responses To Langsdale's Written Discovery

12.     On May 26, 2017, I caused for my office to serve Langsdale's Interrogatories, Requests for Production of Documents, and Requests for Admissions, Set One to Plaintiff. Attached as **Exhibit M** to the Index of Exhibits is a true and correct copy of Langsdale's Interrogatories to Plaintiff Linda Cox, Set One. Attached as **Exhibit N** to the Index of Exhibits is a true and correct copy of Langsdale's Requests for Production of Documents to Plaintiff Linda Cox, Set One. Attached as **Exhibit O** to the Index of Exhibits is a true and correct copy of Langsdale's Requests for Admissions to Plaintiff Linda Cox, Set One.

13.     On June 27, 2015, which was the day before Plaintiff had to respond to Langsdale's written discovery, I received an email from Mr. Nelson requesting Langsdale to grant a one week extension because Mr. Nelson had not communicated with Plaintiff about her proposed responses. I did not agree to this extension because just a week ago, Mr. Nelson claimed he contacted Plaintiff to discuss her deposition. In addition, discovery was about to close and Mr. Nelson had yet to respond to Defendants' efforts to take Plaintiff's deposition. Attached as **Exhibit P** to the Index of Exhibits is a true and correct copy of this email correspondence.

14.     After discovery closed, on July 11, 2017, I received three large envelopes from Plaintiff. Strangely, none of these envelopes contained any postmarks referencing the dates the documents were deposited in the mail. Attached as **Exhibit Q** to the Index of Exhibits are photographs my office took of these envelopes. Contained in these envelopes were Plaintiff's Responses to Langsdale's Interrogatories, Plaintiff's Responses to Langsdale's Request for

Production of Documents, and Plaintiff's Second Supplemental Initial Discovery Disclosure. Attached as **Exhibit R** to the Index of Exhibits is a true and correct copy of Plaintiff's Responses to Langsdale's Interrogatories to Plaintiff Linda Cox, Set One. Attached as **Exhibit S** to the Index of Exhibits is a true and correct copy of Plaintiff's Responses to Langsdale's Requests for Production of Documents to Plaintiff Linda Cox, Set One. Attached as **Exhibit T** to the Index of Exhibits is a true and correct copy of Plaintiff's Second Supplemental Initial Discovery Disclosure.

15.  Because Plaintiff's responses to Langsdale's written discovery were due by June 28, 2017, I reviewed the Certificates of Service attached to these responses and discovered that Mr. Nelson had signed them himself, claiming he personally mailed these to my office on July 3, 2017. However, the Certificate of Service for Plaintiff's Second Supplemental Initial Discovery Disclosure was signed by Mr. Nelson's staff member, Dominique Cannon, which represented she mailed that document to my office on July 7, 2017.

16.  Two days later, on July 13, 2017, I received two more envelopes from Plaintiff. The first envelope, which was postmarked on July 11, 2017, contained Plaintiff's Responses to Langsdale's Requests for Admission. Mr. Nelson again signed the attached Certificate of Service and claimed he personally served this document by mail on July 3, 2017. Attached as **Exhibit U** to the Index of Exhibits is Plaintiff's Responses to Langsdale's Requests for Admission. Attached as **Exhibit V** to the Index of Exhibits is a photograph my office took of the envelope that was postmarked on July 11, 2017. The second envelope I received, which was postmarked on July 12, 2017, contained Plaintiff's Notice of Taking Deposition of Amanda Patterson, a Richland employee. The Certificate of Service attached to that document was signed by Mr. Nelson's assistant, Cannon, and she represented she served that document by mail on July 11, 2017. Attached as **Exhibit W** to the Index of Exhibits is Plaintiff's Notice of Taking Deposition of Amanda Patterson. Attached as **Exhibit X** to the Index of Exhibits is a photograph my office took of the envelope that was postmarked on July 12, 2017.

17.  Despite possessing an email dated October 31, 2016 from Mr. Jacobs to Plaintiff, which I received in response to a Subpoena for Production of Documents that Richland served on


CRN, Plaintiff's discovery responses claimed she had no written communications with CRN. Attached as **Exhibit Y** to the Index of Exhibits is a true and correct copy of this email.

### D. Plaintiff's Untimely Supplements To Her Initial Disclosures

18. On February 2, 2017, Plaintiff served her Initial Disclosures. Attached as **Exhibit Z** is a true and correct copy of "Plaintiff's Initial Discovery Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)." Pertinently, Plaintiff failed to provide a complete computation of damages for each category of damages she was claiming. On February 21, 2017, I sent a letter to Mr. Nelson, informing him that FCRP 26(a) required him to make a reasonable estimate of all damages Plaintiff was claiming. As such, I requested Mr. Nelson to supplement Plaintiff's Initial Disclosures by March 3, 2017. Attached as **Exhibit AA** to the Index of Exhibits is a true and correct copy of this letter to Mr. Nelson dated February 21, 2017. On March 20, 2017, Plaintiff finally supplemented her initial disclosures. Attached as **Exhibit BB** to the Index of Exhibits is a true and correct copy of "Plaintiff's Supplemental Initial Discovery Disclosure Pursuant to Fed. R. C. P. 26(a)(1)."

19. On July 14, 2017, three days after discovery closed, Plaintiff supplemented her initial disclosures again. Plaintiff identified in her third supplement to her initial disclosures sixteen new witnesses, including nine witnesses I had no prior knowledge of. In addition, Plaintiff simply listed these new witnesses' addresses and omitted any description of their expected testimony. Attached as **Exhibit CC** to the Index of Exhibits is a true and correct copy of "Plaintiff's Third Supplemental Initial Discovery Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)."

20. On July 27, I received by hand delivery Plaintiff's fourth supplement to her initial disclosures. This document was erroneously labeled as Plaintiff's fifth supplement. For the first time, Plaintiff identified "a summary of redacted invoices [ . . .] for legal fees charged by the Law Office of Vernon Nelson through June 30, 2017," which she never identified in any form in her previous disclosures. Attached as **Exhibit DD** to the Index of Exhibits is a true and correct copy of "Plaintiff's [Fourth] Supplemental Initial Discovery Disclosures Pursuant to Fed. R. Civ. P.

1  26(a)(1)."

2  21. Next, on July 27, 2017, Plaintiff served by mail Plaintiff's fifth supplement to her

3  initial disclosures. In this disclosure, Plaintiff identified for the first time "[a]ll Pleadings filed in

4  RE: *Richland Holdings, Inc. v. Paul Advent*, Case No. A-15-715520-C." This case appears to

5  have no relevance to this action, and I had no prior knowledge that Plaintiff intended to introduce

6  pleadings from this case into evidence at trial. Attached as **Exhibit EE** to the Index of Exhibits is

7  a true and correct copy of "Plaintiff's Fifth Supplemental Initial Discovery Disclosures Pursuant

8  to Fed. R. Civ. P. 26(a)(1)."

### E.   Plaintiff's Refusal To Meet And Confer To Resolve Plaintiff's Discovery Abuses

22. After discussing Plaintiff's discovery abuses with Mr. Clement, it was decided I would write to Plaintiff and document Plaintiff and Mr. Nelson's actions. Accordingly, on July 14, 2017, I wrote to Mr. Nelson and documented Plaintiff's flagrant disregard of the Federal Rules of Civil Procedure. I also explained that Plaintiff had prejudiced my client's defense, which warranted terminating sanctions. Despite this strongly worded correspondence, Defendants received no response from Mr. Nelson. Attached as **Exhibit FF** to the Index of Exhibits is a true and correct copy of my letter to Mr. Nelson dated July 14, 2017.

23. Accordingly, on July 21, 2017, I again wrote to Mr. Nelson, informing him that at minimum, Plaintiff must stipulate to: Defendants taking her deposition outside the close of discovery on July 28, 2017, and (2) the parties extending the dispositive motion deadline. Defendants, however, received no response. Attached as **Exhibit GG** to the Index of Exhibits is a true and correct copy of my letter to Mr. Nelson dated July 21, 2017.

24. Finally, on August 4, 2017, I received an email from Melanie Nelson containing Plaintiff's verification to her responses to Langsdale's Interrogatories, which Plaintiff purportedly signed by electronic means on August 3, 2017. Attached as **Exhibit JJ** to the Index of Exhibits is a true and correct copy of the email I received on August 4, 2017 containing Plaintiff's verification. However, Mr. Nelson's office did not attempt to address the other issues I raised in my previous correspondences.

4829-0734-6509.5                                   - 8 -

25. Attached as **Exhibit KK** to the Index of Exhibits are the results I received from performing a LexisNexis CourtLink search on August 1, 2017, for active cases that Mr. Nelson filed in the District of Nevada from August 1, 2016 to August 1, 2017. The results returned 41 cases that listed Mr. Nelson as the attorney of record for the respective plaintiffs in each case.

### F. Plaintiff Purposely Withheld Documents To Langsdale's Written Discovery Requests.

26. A cursory review of Plaintiff's responses and objections to Langsdale's Requests for Production and Interrogatories will reveal them to be grossly deficient. For example, even though Plaintiff and Mr. Nelson knew CRN had communicated with Plaintiff about this case, Plaintiff and Mr. Nelson purposely withheld documents to these following discovery requests:

**REQUEST NO. 4:**

Please produce all communications between YOU and Credit Restoration of Nevada regarding YOUR DEBT.

**RESPONSE TO REQUEST NO. 4:**

Objection. This interrogatory is irrelevant because it seeks information that is not relevant to plaintiff s claims and defendant's defenses. Notwithstanding the foregoing. Plaintiff is not aware of any communications between her and Credit Restoration of Nevada.

**REQUEST NO. 5:**

Please produce all communications between YOU and Credit Restoration of Nevada regarding the UNDERLYING ACTION.

**RESPONSE TO REQUEST NO. 5:**

See response to Request No. 4.

**REQUEST NO. 6:**

Please produce all DOCUMENTS YOU provided Credit Restoration of Nevada regarding the UNDERLYING ACTION.

**RESPONSE TO REQUEST NO. 6:**

See response to Request No. 4

**REQUEST NO. 7:**

Please produce all DOCUMENTS YOU received from Credit Restoration of Nevada regarding the UNDERLYING ACTION.

**RESPONSE TO REQUEST NO. 7:**

See response to Request No. 4.

**REQUEST NO. 8:**

Please produce all DOCUMENTS YOU provided Credit Restoration of Nevada regarding YOUR DEBT.

**RESPONSE TO REQUEST NO. 8:**

See response to Request No. 4.

**REQUEST NO. 9:**

Please produce all DOCUMENTS YOU received from Credit Restoration of Nevada regarding YOUR DEBT.

**RESPONSE TO REQUEST NO. 9:**

See response to Request No. 4.

Clearly, Plaintiff and her counsel did not respond to these requests in good faith.

G. **Langsdale's Request For Monetary Sanctions**

27. In addition, Langsdale is requesting monetary sanctions against Plaintiff and her counsel to reimburse Langsdale for the attorney's fees it incurred to draft this Motion and for I to appear at Plaintiff's deposition. My billable rate for this matter is $195. This rate is much lower than the average rate charged to handle similar cases. Moreover, my education and experience more than justify my billable hourly rate. I graduated *Cum Laude* from University of California, Hastings College of the Law in May 2013, and I am licensed in California and Nevada. I am one of the principal attorneys that opened the Las Vegas office for Ropers, Majeski, Kohn and Bentley, a nationwide firm with over eight offices located in the United States. I also regularly practice in federal court and defend against various consumer protection lawsuits, including putative class actions. I was also a 2016 update author for the California Liability Insurance Practice: Claims and Litigation, published by the Continuing Education of the Bar, California.

28. Langsdale is requesting this Court sanction Plaintiff and her counsel in the amount of $14,664, which represents the avoidable attorney's fees my client incurred due to Plaintiff's discovery abuses. I spent 2.0 hours to appear at Plaintiff's deposition and approximately 73.2

hours to prepare this Motion. The approximate total amount of time is 75.2, which was reasonably for the work I performed. Attached as **Exhibit PP** to the Index of Exhibits is a true and correct copy of my billable time entries reflecting the time I spent to appear at Plaintiff's deposition and draft this Motion.

I declare under the penalty of perjury according to the laws of the United States of America and the State of Nevada that the foregoing is true and correct to the best of my knowledge.

Executed on August 21, 2017 at Las Vegas, Nevada.

*/s/ Timothy J. Lepore*
Timothy J. Lepore, Esq.