UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LINDA COX, | Case No.: 2:16-cv-02914-APG-VCF |
| Plaintiff | **Order Granting Motion for Summary Judgment** |
| v. | [ECF No. 123] |
| RICHLAND HOLDINGS, INC, d/b/a ACCOUNT CORP OF SOUTHERN NEVADA, et al., | |
| Defendants | |

Plaintiff Linda Cox sues defendants Richland Holdings, Inc. d/b/a Account Corp of Southern Nevada (AcctCorp), Parker and Edwards, Inc. (P&E), and Langsdale Law Firm, P.C. for actions arising from the alleged attempt to collect a debt. Cox alleges that all defendants are liable for violations of the Fair Debt Collection Practices Act (FDCPA), the Nevada Deceptive Trade Practices Act (NDTPA), and for abuse of process under Nevada law. AcctCorp and P&E move for summary judgment or, alternatively, dismissal under Federal Rule of Civil Procedure 41(b). No material facts are in dispute and the defendants are entitled to judgment on Cox's claims. Therefore, I grant the defendants' motion.

**I.  BACKGROUND**

In November 2015, Cox went to the emergency room and had her gallbladder removed by Dr. Zimmerman of Advanced Laparoscopic and General Surgery of Nevada (ALGS).[1] At her follow-up appointment with ALGS, she signed a document titled "Financial Policy."[2] The financial policy stated that Cox agreed to pay "all collection/legal fees" that may be added to her

---

[1] ECF No. 78-1 at 21–22.

[2] *Id.* at 23–24.

account if her account was "referred to a collection service due to lack of payment on [her] part."[3]

Cox became delinquent on her account, and ALGS assigned the account to AcctCorp, which engaged P&E to file a complaint against Cox in state court to collect the debt.[4] Cox was served with the summons and complaint on October 14, 2016.[5] On November 2, Cox went to AcctCorp's office to make a payment and spoke with AcctCorp's manager, Amanda Patterson. Patterson and Cox spoke about the addition of costs and fees under ALGS's financial policy.[6] The tenor of the meeting is contested, but the parties agree for the purposes of this motion that, at the end of the meeting, Patterson told Cox to "get the fuck out of her office," and Cox immediately left.[7]

Cox filed this lawsuit a month later alleging violations of the FDCPA, the NDTPA, and abuse of process against AcctCorp, P&E, and Langsdale. I previously granted Langsdale's motion to dismiss the claims against it and allowed Cox to amend her complaint if she could add facts sufficient to state those claims.[8] Cox filed an amended complaint that exceeded the scope of the leave I granted her.[9] I then granted the defendants' motion to strike Cox's amended complaint, giving Cox specific instructions about what she could include in her second amended

---

[3] ECF No. 71-1 at 2.
[4] *See* ECF Nos. 71-3, 71-7 at 3.
[5] ECF No. 71-8 at 2–3.
[6] ECF No. 71-6 at 3–4.
[7] ECF No. 78-1 at 96–97 (Cox deposition at 94:16–95:5).
[8] ECF No. 74.
[9] ECF No. 82.

complaint.[10] Cox timely filed her second amended complaint[11] and has since settled her claims against Langsdale.[12] AcctCorp and P&E now move for summary judgment or, in the alternative, dismissal sanctions against Cox under Rule 41(b).[13] I decline the request to dismiss Cox's complaint because her claims are best decided on their merits. I grant the defendants' motion for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[15] If reasonable minds could differ on material facts, summary judgment is not appropriate and the case must proceed to trial.[16]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[17] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[18]

---

[10] ECF No. 115.
[11] ECF No. 116.
[12] ECF No. 125.
[13] ECF No. 123.
[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[15] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[18] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

complaint.[10] Cox timely filed her second amended complaint[11] and has since settled her claims against Langsdale.[12] AcctCorp and P&E now move for summary judgment or, in the alternative, dismissal sanctions against Cox under Rule 41(b).[13] I decline the request to dismiss Cox's complaint because her claims are best decided on their merits. I grant the defendants' motion for summary judgment.

**II.　ANALYSIS**

　　**A.　Summary Judgment Standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[15] If reasonable minds could differ on material facts, summary judgment is not appropriate and the case must proceed to trial.[16]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[17] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[18]

---

[10] ECF No. 115.
[11] ECF No. 116.
[12] ECF No. 125.
[13] ECF No. 123.
[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[15] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[18] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

### B.     New Theories of Liability

In response to the defendants' motion, Cox argues several new theories of liability that were not previously alleged. First, she argues that ALGS's financial policy is not a valid contract and cannot be applied retroactively to services rendered before it was signed. Second, she argues that the "contractual collection fees" added to her debt under the financial policy violate Nevada Revised Statutes Chapter 449A, which is a violation of § 1692f of the FDCPA. But neither of these allegations was made in Cox's original complaint, either amended complaint, or any of her briefing up to this point.

"[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."[19] When issues are raised at summary judgment that fall "outside the scope of the complaint," a district court must construe the matter as a request to amend the pleadings.[20] Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending, the moving party must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16(b)(4).[21] The analysis focuses on the moving party's diligence.[22] The good cause standard typically will not be met where the party seeking a late amendment has been aware of the facts and theories supporting amendment since the inception of the action.[23]

---

[19] *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

[20] *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2006) (quoting *Apache Survival Coal v. U.S.*, 21 F.3d 895, 910 (9th Cir. 1994)).

[21] *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

[22] *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609.

[23] *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotation omitted); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming the district court's denial of leave to

Although Rule 16 does not mention a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment.[24] Prejudice has been found where a late amendment would require the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery."[25] Whether to modify the scheduling order's amendment deadline lies within my discretion.[26]

Cox has had two opportunities to amend her complaint and multiple rounds of dismissal and summary judgment, yet did not raise these new theories of liability. Cox also was directly asked several times during discovery to clarify her allegation that the "additional amounts" were "unlawful" or "unlawfully added" to her account. She refused to answer interrogatories on the topic[27] and testified at her deposition that she thought the fees were unlawful because it was unfair to add fees for trying to find her to collect on the debt.[28] At no point has she alleged the contract was invalid or the fees violated Nevada Revised Statutes Chapter 449A.

As a result, the defendants did not conduct discovery related to these allegations. Both the discovery cutoff and the deadline to amend pleadings were nearly two years ago.[29] Allowing

---

amend where the plaintiff sought to add a claim based on facts that were available to the plaintiff before he amended his complaint).

[24] *Coleman*, 232 F.3d at 1295.

[25] *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted); *see also Coleman*, 232 F.3d at 1295 ("prejudice to [the non-moving party], although not required under Rule 16(b), supplies an additional reason for denying the motion" to amend); *MV Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (denial of motion to amend upheld where new allegations would "totally alter the basis of the action" and necessitate additional discovery).

[26] *Dang*, 488 F.3d at 1142-43.

[27] ECF No. 87-7 at 6 (Interrogatory No. 2 and Answer).

[28] ECF No. 129-1 at 8–10 (Cox deposition at 107:17–109:25).

[29] ECF No. 22 at 2.

Cox to rely on these allegations and theories of liability raised at this late stage would prejudice the defendants, who did not engage in discovery about them. And in my previous order, I made clear that further leave to amend would not be granted at this late stage of the proceedings.[30] I therefore deny leave to amend and do not consider Cox's arguments based on alleged violations of Nevada Revised Statutes Chapter 449A and the invalidity of the contract with ALGS.

### C.    FDCPA Violations

#### 1.    AcctCorp

##### a.    Contractual Collection Fees

Cox first claim that AcctCorp unlawfully added the contractual collection fee of $408.41 because the fee was not authorized by her agreement with ALGS. Cox raises several new theories of liability in her response, but as discussed I will not consider them. Cox's argument throughout the case was that the fee was not authorized by the agreement that created the debt, but she is wrong. The contract contemplates adding this fee[31] and Cox testified that she agreed to its terms.[32] She has not produced evidence to show a dispute of these facts. I grant summary judgment in AcctCorp's favor on this portion of Cox's FDCPA claim.

##### b.    1692g

Section 1692g of the FDCPA requires that debt collectors send consumers a written notice containing the amount of the debt, the name of the creditor to whom the debt is owed, and several other notices of the consumer's rights to dispute the debt within 30 days of receiving the

---

[30] ECF No. 115 at 6 ("No further amendment will be allowed.").

[31] ECF No. 71-1 (Stating that, under the "Collection fee policy," "[i]n the event my account is referred to a collection service due to lack of payment on my part, I agree to pay all collection/legal fees that may be added to my account.").

[32] ECF No. 71-2 at 11–12 (Cox deposition at 22:16–23:11) (acknowledging agreement to pay all collection and legal fees added to her delinquent account).

6

notice.[33]  This notice must either be part of the debt collector's initial communication with a consumer or be sent "[w]ithin five days after the initial communication."[34]

Cox first alleges that she never received this notice from AcctCorp.  But "[t]he plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor.  Instead, the plain language states that such a Notice need only be sent to a debtor."[35]  AcctCorp has presented evidence that it sent the letter to Cox,[36] and Cox responds only with speculation that the letter was never sent because she never received it, which is not enough to create a question of fact to survive summary judgment.[37]

Cox's main argument is that even if the letter was sent, it does not satisfy § 1692g's requirements because it does not properly identify the amount of her debt.  She argues that § 1692g requires debt collectors to state the total amount due—including interest, charges, and principal—as of the date the letter is sent.  She contends that because the letter identifies only a total amount due and does not state whether that amount includes interest or fees, it falls short of § 1692g's requirements.  But the law does not require the itemization that Cox contemplates in her argument.[38]

---

[33] 15 U.S.C. § 1692g(a).

[34] *Id.*

[35] *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999).

[36] ECF No. 71-5 at 2.

[37] *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

[38] *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1108–09 (W.D. Wash. 2012) (citing *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005) (per curiam) (concluding that the notice provisions in § 1692g, including a statement of the total debt, are sufficient to apprise debtors of their rights)).

AcctCorp has presented evidence that it satisfied its obligations under § 1692g. It sent the letter to Cox on May 10, 2016,[39] and the letter included all the required disclosures, including the total amount due as of the printing of the letter.[40] Cox fails to show a dispute of material fact about AcctCorp's alleged § 1692g violations, so I grant summary judgment in its favor on this portion of Cox's FDCPA claim.

### c.  1692d(2)

Section 1692d of the FDCPA forbids a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[t]he use of obscene or profane language."[41] The parties agree there was only one instance of profane language used in Cox's communications with AcctCorp: Patterson telling Cox to "get the fuck out" of her office.

AcctCorp argues that the single profanity was not uttered "in connection with the collection of a debt," so the phrase does not expose AcctCorp to liability under § 1692d. Cox responds only that this argument is not supported in any legal authority.

To trigger FDCPA protections under § 1692d, the statement must be made "in connection with the collection of a debt."[42] There is no bright line test for whether a communication is undertaken in connection with collection of a debt.[43] The Ninth Circuit has not directly addressed this issue, but other circuits have held that when a communication is "made specifically to induce the debtor to settle her debt," it will be "sufficient to trigger the

---

[39] ECF No. 71-5 at 2.
[40] ECF No. 71-11 at 2.
[41] 15 U.S.C. § 1692d(2).
[42] 15 U.S.C. § 1692d.
[43] *Heejoon Chung v. U.S. Bank, NA*, 250 F. Supp. 3d 658, 687 (D. Haw. 2017).

protections of the FDCPA."[44]  This requires the "animating purpose of the communication to induce payment by the debtor."[45]

It is undisputed that after Patterson told Cox to "get the fuck out," the conversation ended immediately.  Even drawing inferences in Cox's favor, a reasonable jury could not find that the statement's "animating purpose" was to induce payment from Cox.  Patterson made the statement not to convince Cox to pay but to get her to leave.  Cox presents no evidence calling this conclusion into question.  I therefore grant summary judgment in AcctCorp's favor on this claim.

### d. 1692e

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means" to collect a debt and provides a non-exhaustive list of 16 prohibited practices.[46]  A debt collector's liability under § 1692e is an issue of law and requires an objective analysis of whether the "least sophisticated debtor" would be misled by a communication.[47]  A false or misleading representation must be material in that it frustrates a consumer's ability to intelligently choose his or her response.[48]  "[M]ere technical falsehoods that mislead no one" will not give rise to liability under the FDCPA.[49]

---

[44] *Gburek*, 614 F.3d at 385.

[45] *Grden v. Keikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (concluding "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor").

[46] 15 U.S.C. § 1692e.

[47] *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quotation omitted).

[48] *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

[49] *Id.* at 1034.

First, Cox argues that the amount of her debt was misrepresented in the § 1692g notice in violation of § 1692e(2)(A), which prohibits the false representation of "the character, amount, or legal status of any debt." But she provides no evidence to show support this. She premises this argument in part on her assertions that the letter was inadequate under § 1692g, but the letter met all of § 1692g's requirements. So, to the extent that Cox's claim for violations of § 1692e is premised on the § 1692g letter, I grant summary judgment in AcctCorp's favor.

Cox's primary alleged violation is of § 1692e(5), which prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken." Cox alleges Patterson told her that if she did not answer AcctCorp's state-court complaint, it would seek default judgment against her.[50] AcctCorp argues that, as a matter of law, it could have sought default judgment against Cox in the state court action if Cox did not respond to its complaint and that Cox cannot present evidence to show that it did not intend to pursue that action. Cox responds that her attorney received an email about one week after her conversation with Patterson in which AcctCorp's counsel stated that it was dismissing its case against Cox.[51] She contends that this email shows that AcctCorp "never intended" to carry through on Patterson's threats of legal action and that Patterson "had to know" that was the case. But Cox provides no other evidence to support this speculation.

AcctCorp could legally pursue a default judgment if Cox did not answer its complaint. *See* Nevada Rule of Civil Procedure 55(a). Cox, in turn, has not carried her burden at summary judgment to show a genuine dispute of material fact about whether AcctCorp intended to fully litigate its case against her. The notice of dismissal was filed two days after her visit to

---

[50] ECF No. 116 at ¶ 27.

[51] ECF No. 128-1 at 6.

10

AcctCorp's office and the email was sent three days after that.[52] The email tends to show that AcctCorp at one time intended to pursue the legal action against Cox but decided not to after engaging in a cost-benefit analysis.[53] Cox relies only on speculation that Patterson "had to know" AcctCorp intended to dismiss its case when she told Cox that AcctCorp would seek a default judgment. That is not enough to satisfy her burden at summary judgment.[54] I therefore grant summary judgment in AcctCorp's favor on Cox's claim for violations of § 1692e.[55]

### 2. P&E

P&E argues that Cox's claims against it fail because (1) it was not required to send a validation of debt letter because it never had any communications with Cox and (2) because it never had any communications with Cox, it could not have used any obscene, profane, abusive, or threatening language or made any misrepresentations or misstatements to Cox.[56]

#### a. 1692g

Cox's FDCPA cause of action names P&E, but it alleges no activity by P&E that may have given rise to liability under § 1692g. And Cox does not argue in her opposition that P&E was subject to this obligation. It is undisputed that Cox never communicated with P&E. So P&E never had an obligation to send a notice under § 1692g and P&E did not violate § 1692g as

---

[52] ECF No. 71-10 at 2.

[53] *Id.*

[54] *Nelson*, 83 F.3d at 1081–82.

[55] Cox also raises for the first time in her opposition a violation for § 1692e(8), alleging that AcctCorp falsely reported the amount of her debt to the credit bureaus. But, as discussed, I will not consider new claims raised in Cox's opposition.

[56] P&E also argued in its motion that it is not a "debt collector" under the FDCPA but concedes that argument for the purposes of this motion in its reply. I therefore do not address it here.

a matter of law.  I therefore grant summary judgment in P&E's favor on Cox's claim for violations of § 1692g.

### b. 1692d and 1692e

Because P&E never communicated with Cox, it is impossible for it to have used obscene or profane language in attempting to collect the debt in violation of § 1692d or to have misrepresented the amount of Cox's debt or threatened Cox in violation of § 1692e.  I therefore grant summary judgment in P&E's favor on Cox's claim for violations of §§ 1692d and 1692e.

### c. Contractual Collection Fees

The only portion of the FDCPA claim in which Cox mentions P&E relates to the allegedly unlawful adding of the contractual collection fees to her debt.  She argues that P&E filed a complaint on AcctCorp's behalf to collect the debt, including the allegedly unlawful fees, therefore participating in the violation.  But as discussed above, the fees were lawfully added under the terms of the contract to which Cox agreed.  I therefore grant summary judgment in P&E's favor on this portion of Cox's FDCPA claim.

## D. Abuse of Process

To survive summary judgment on an abuse of process claim, a plaintiff must "present specific facts that [the defendant] had an ulterior purpose in the underlying lawsuit other than resolving [its] legal dispute with [the plaintiff], and that [the defendant] willfully and improperly used the legal process to accomplish that purpose."[57]  Under Nevada law, an abuse of process claim "requires a 'willful act,' and . . . merely filing a complaint and proceeding to properly

---

[57] *LaManita v. Redisi*, 38 P.3d 877, 880 (Nev. 2002).

1  litigate the case does not meet this requirement."[58]  There must be some act subsequent to filing
2  that abuses the process for the claim to succeed.[59]

3        The Supreme Court of Nevada has found improper willful acts where a defendant
4  commits a flagrant or extraordinary act that perverts the legal process.  For example, in *Nevada*
5  *Credit Rating Bureau v. Williams*, the court affirmed a finding of abuse of process where a
6  plaintiff attached an entire property worth over $30,000 to secure a debt of less than $5,000 with
7  the ulterior purpose to coerce payment rather than to obtain security for the debt.[60]  Similarly, the
8  court found abuse of process when a city attorney charged a police officer with a criminal
9  violation to obtain the officer's voluntary resignation.[61]  Coercing a nuisance settlement where
10 there was no legal basis for a claim has also been held to be an abuse of process.[62]

11       The basis of Cox's claim is the commencement and prosecution of legal proceedings "for
12 the ulterior purpose of collecting unlawful fees in violation of the FDCPA."[63]  AcctCorp argues
13 that Cox has no evidence that it had an ulterior motive in filing the state-court action against her
14 or that it took some other action outside of filing the complaint and properly litigating it.

15       In response, Cox relies on *Goldsmith v. Aargon Agency, Inc.*, a case from this district in
16 which the court denied a motion to dismiss a similar claim.[64]  But *Goldsmith* is inapplicable here
17 because it was deciding a motion to dismiss, not a motion for summary judgment.  While the

---

[58] *Land Baron Invs. v. Bonnie Springs Family LP*, 356 P.3d 511, 520 (Nev. 2015).
[59] *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985).
[60] 503 P.2d 9, 12–13 (Nev. 1972).
[61] *Pasadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993).
[62] *Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980).
[63] ECF No. 116 at ¶¶ 49–50.
[64] 2018 WL 1567848 (D. Nev. Mar. 30, 2018).

allegations in *Goldsmith* were sufficient to state a claim for abuse of process, that case does not stand for the proposition that similar unsupported allegations can survive a motion for summary judgment.

Cox presents no evidence showing AcctCorp had an ulterior motive in filing the state-court complaint or that AcctCorp took some willful act outside of filing and litigating a complaint. She argues that the email from AcctCorp's counsel shows an ulterior motive, but as discussed above, that email simply shows that AcctCorp's counsel made the business decision to drop its case against Cox in November 2016, not that it never intended to litigate the case as Cox hypothesizes. There is no genuine issue of material fact to support Cox's abuse of process claim. I therefore grant the defendants' motion for summary judgment on this claim.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 123] is GRANTED.**

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of the defendants and against the plaintiff and close this case.

DATED this 30th day of March, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE